FILED

Apr 16 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Richard B. Kaufman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Sarah Jenkins
Harmony Mappes
Anna Behrmann
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

"F.B.C.", a Pseudonym,

*Appellant/Cross-Appellee/Plaintiff,*

v.

MDWISE, INC., d/b/a
MDWISE, MDWISE
NETWORK, INC., and
MDWISE MARKETPLACE,
INC.,

*Appellees/Cross-Appellants/Defendants.*

April 16, 2019

Court of Appeals Case No.
18A-CT-1934

Interlocutory Appeal from the
Marion Superior Court

The Honorable Heather A. Welch,
Special Judge

Trial Court Cause No.
49D01-1801-CT-1781

**Bradford, Judge.**

# Case Summary

In 2017, F.B.C. and her husband ("Husband") had a health insurance policy with MDwise, Inc., d/b/a MDwise; MDwise Network, Inc.; MDwise Marketplace, Inc. (collectively "Insurer"). In May of 2017, F.B.C. was tested for various sexually transmitted diseases, and Insurer posted a statement ("the Statement") listing testing for the diseases on its web portal which was accessible by Husband as the primary policyholder. Husband viewed the Statement which F.B.C. alleges caused him to cease reconciliation of their marriage and proceed with their pending divorce. F.B.C. filed suit against Insurer alleging, *inter alia*, disclosure of private facts to a particular public ("Disclosure"), intrusion ("Intrusion"), and outrage ("Outrage"). Insurer moved to dismiss all claims, which motion was granted by the trial court on all claims except Outrage. F.B.C. contends that the trial court erroneously dismissed her claims of Disclosure and Intrusion. Insurer contends that the trial court erroneously denied its motion to dismiss F.B.C.'s Outrage claim. Because we conclude that all three claims should have been dismissed as a matter of law, we affirm in part, reverse in part, and remand with instructions to dismiss F.B.C.'s Outrage claim.

# Facts and Procedural History

In 2017, F.B.C. and Husband were attempting to reconcile before following through with their pending divorce. The couple had a health insurance policy through Insurer, on which Husband was the primary policyholder. On May 17,

2017, F.B.C. was tested for various sexually transmitted diseases. When Husband logged into Insurer's online web portal, he accessed the Statement which listed, *inter alia*, the diseases for which F.B.C. was tested. As a result, F.B.C. alleges that Husband refused to continue reconciliation and proceeded with the pending divorce.

[3] On January 16, 2018, F.B.C. filed a complaint against Insurer alleging, *inter alia*, Disclosure, Intrusion, and Outrage. On March 12, 2018, Insurer moved to dismiss all counts pursuant to Indiana Trial Rule 12(B)(6). The trial court granted Insurer's motion to dismiss F.B.C.'s Disclosure and Intrusion claims but denied the motion as to the Outrage claim.

# Discussion and Decision

[4] F.B.C. contends that the trial court erroneously dismissed her claims of Disclosure and Intrusion. Insurer contends that the trial court erroneously denied its motion to dismiss F.B.C.'s Outrage claim. Indiana Trial Rule 12(B)(6) is a motion to dismiss for "[f]ailure to state a claim upon which relief can be granted[.]"

> A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. When ruling on a motion to dismiss, the court must view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the non-movant's favor. We review a trial court's grant or denial of a Trial Rule 12(B)(6) motion *de novo*. We will not affirm such a dismissal unless it is

> apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances.

*Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015) (internal citations and quotations omitted).

# I. Disclosure

F.B.C. contends that the trial court erroneously dismissed her Disclosure claim. Because the tort of Disclosure has not yet been recognized in Indiana, we disagree. In *Doe v. Methodist Hospital*, the Indiana Supreme Court declined to adopt Disclosure, which is a sub-tort of invasion of privacy, as an actionable claim. 690 N.E.2d 681, 693 (Ind. 1997). The Court recognized that while neighboring states have adopted a more liberal Disclosure standard, it was not persuaded to adopt Disclosure as a cognizable claim in Indiana. *Id.* at 692–93. *See also Felsher v. University of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001) ("Our discussion of [the history of the invasion of privacy tort] and the Second Restatement served as a prelude to our decision not to recognize a branch of the tort involving the public disclosure of private facts."). F.B.C. has failed to establish that the trial court erroneously dismissed her Disclosure claim.

# II. Intrusion

F.B.C. contends that the trial court erroneously dismissed her Intrusion claim. Intrusion occurs when there has been an "intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). F.B.C. does not claim any

physical intrusion by Insurer but, rather, claims that Insurer intruded upon her emotional solace. However, we have specifically chosen not to recognize claims of Intrusion where the intrusion only invades plaintiff's emotional solace. *See Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 868–69 (Ind. Ct. App. 2013) (concluding that the tort of Intrusion has only been found where there was an intrusion by physical contact or an invasion of plaintiff's physical space, and refusing to extend it to cases where the only intrusion is upon plaintiff's emotional solace), *trans. denied*. Because F.B.C. only claims that Insurer intruded upon her emotional solace, we conclude that the trial court correctly dismissed her claim of Intrusion.

# III. Outrage

[7] Insurer cross-appeals, contending that the trial court erroneously denied its motion to dismiss F.B.C.'s Outrage claim. Outrage (also referred to as intentional infliction of emotional distress) is caused by "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522–23 (Ind. Ct. App. 2001) (internal citations omitted), *trans. denied*. To prove Outrage, the plaintiff must establish that the defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Id.* at 523. In appropriate cases, the question of what constitutes extreme and outrageous conduct can be decided as a matter of law. *Id.* Conduct is extreme and outrageous

only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

*Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996) (internal quotations omitted).

[8] We conclude that Insurer's alleged conduct was not extreme and outrageous as a matter of law. F.B.C. alleges that Insurer caused her severe emotional distress by posting the Statement listing the various diseases that she was tested for on its web portal, which was subsequently viewed by Husband. This is not conduct which is utterly intolerable in a civilized community but, rather, routine in today's technologically-driven society. Health insurance companies maintain web portals to allow policyholders instant access to their personal medical information, insurance claims, etc., and the current matter is no exception. Husband was the primary policyholder with instant access to the couple's medical insurance information through Insurer's web portal. Even if we assume, which we do not, that Insurer intended to cause F.B.C. severe emotional distress by posting the Statement for Husband to view, the conduct still does not amount to extreme and outrageous. Therefore, the trial court erred by failing to dismiss F.B.C.'s Outrage claim.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to dismiss F.B.C.'s Outrage claim.

Brown, J., concurs.

Bailey, J., dissents with opinion.

| | |
|---|---|
| "F.B.C.", a Pseudonym,<br>*Appellant/Cross-Appellee-Plaintiff,*<br><br>v.<br><br>MDwise, Inc. d/b/a MDwise;<br>MDwise Network, Inc.; and<br>MDwise Marketplace, Inc.,<br>*Appellees/Cross-Appellants-Defendants.* | Court of Appeals Case No.<br>18A-CT-1934 |

**Bailey, Judge, dissenting.**

I respectfully dissent because I believe, given the opportunity, the Indiana Supreme Court would recognize the torts of public disclosure of private facts and intrusion into emotional solace. Seeing no barrier to these claims, I would conclude that F.B.C. stated actionable claims of Disclosure and Intrusion. I would also conclude that F.B.C. stated an actionable claim of Outrage.

# Disclosure

Under Indiana law concerning privacy and publicity, the dead have more protection than the living. Indeed, state law guards against the unauthorized exploitation of personal attributes by conferring a broad right of publicity: a property right in one's name, voice, signature, image, and gestures, among

other things. *See* Ind. Code § 32-36-1-7 & -8. Hoosiers enjoy this protection throughout their lives and the transferrable right of publicity lives on for 100 years after death. *See* I.C. § 32-36-1-8, -16 & -19. Thus, Indiana law offers a remedy—even punitive damages—if one's face is printed on a box of cereal. *See* I.C. § 32-36-1-10. Yet, Indiana law does not definitively recognize a more basic right—a privacy right that protects the dignity of the living by guarding against the unauthorized public disclosure of highly personal information.

[12]  In 1997—amid the infancy of the internet, when carrying troves of personal information on a pocket device may have seemed "the stuff of science fiction," *Zanders v. State*, 118 N.E.3d 736, 738 (Ind. 2019)—a plurality of the Indiana Supreme Court "decline[d] to recognize" the tort of public disclosure of private facts, *see Doe v. Methodist Hosp.*, 690 N.E.2d 681, 682 (Ind. 1997). A few years later, in *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001), our supreme court characterized the plurality decision as a majority holding, noting that the discussion in *Doe* "served as a prelude to [its] decision not to recognize a branch of the tort involving the public disclosure of private facts."

[13]  Yet, since 1997, there has been an "exponential increase in the amount and sensitivity of personal information that has become available online . . . and [a] corresponding increase in the speed and ease with which that information may be broadcast to the public." *Robbins v. Trustees of Ind. Univ.*, 45 N.E.3d 1, 13 (Ind. Ct. App. 2015) (Crone, J., concurring in part and concurring in result in part). For these reasons, Judge Crone thoughtfully "urge[d] our supreme court

to revisit its pronouncements" on the tort of public disclosure of private facts—albeit in a case in which transfer ultimately was not sought. *See id.* at 13.

[14] As Judge Crone observed, "[w]hether Indiana recognizes this tort is technically an open question, but for all practical purposes the answer is currently no." *Id.* Whereas Judge Crone was "not inclined to rock this particular boat" by recognizing the tort of public disclosure of private facts, *id.*, I believe our supreme court would have clearly recognized this tort had day-to-day life in 1997 been as inextricably intertwined with technology as it is today. Indeed,

> [i]t is difficult to overstate the extent to which we have surrendered, by choice or compulsion, the most intimate details of our lives to the digital domain. Many Hoosiers are paid . . . online. And many Hoosiers bank, shop, conduct business, pay taxes, engage in social and political activity, seek medical and legal advice, and (pursuant to federal law) have their health records stored online. Although much of this information is expected and intended to be disseminated to a wide audience (family vacation photos, job résumés), much is expected and intended to be kept under the electronic equivalent of a lock and key (financial records, psychiatric treatment notes).

*Id.* at 13-14. Moreover, with the ubiquity of digital data, it is easier than ever for unwanted third parties to obtain—and share—sensitive information. *See, e.g.*, *Doe*, 690 N.E.2d at 695 (Dickson, J., concurring in result) ("With our ever-increasing population and the growing technological opportunities for invasive scrutiny into others' lives, the compilation of private data, and the disclosure of purely personal matters, this common law tort [of disclosure] grows in importance as a valuable source of deterrence and accountability."); *see also*

Elizabeth M. Jaffe, *Cyberbullies Beware: Reconsidering* Vosburg v. Putney *in the Internet Age*, 5 Charleston L. Rev. 379, 382-85 (2011) (noting the tort implications of tragic events involving a college student who committed suicide after his roommate used a computer camera to spy on the student's sexual encounters, revealed the student's sexual orientation in a post on social media, and shared a link that allowed third parties to remotely view the camera feed).

[15]  According to the Indiana Supreme Court, "[t]he extent to which the tort of invasion of privacy is recognized in Indiana is not yet settled." *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1057 (Ind. 2001); *see Robbins*, 45 N.E.3d at 13 (Crone, J., concurring in part and concurring in result in part) ("Whether Indiana recognizes this tort [of disclosure] is technically an open question."). Furthermore, our supreme court has acknowledged "that unique circumstances may 'give rise to the expansion of the . . . forms of tort liability for invasion of privacy.'" *Felsher*, 755 N.E.2d at 595 (quoting Restatement (Second) of Torts § 652A cmt. c (1977)). In light of the vast technological advances that have profoundly reshaped day-to-day life since the 1990s, I believe the Indiana Supreme Court would clearly recognize not only a tort of public disclosure of private facts but also—as this case involves—the sub-tort of disclosure to a particular public. *See, e.g.*, *Doe*, 690 N.E.2d at 692 (discussing this sub-tort, recognized in other states, where the pertinent inquiry is "whether a particular disclosure would be embarrassing given the plaintiff's relationship with the 'particular public' at issue"). Here, F.B.C. alleged the unpermitted disclosure of sensitive health information to F.B.C.'s spouse—that F.B.C. had been tested for

several sexually communicable diseases. I would conclude F.B.C. alleged a viable claim of Disclosure. Thus, I would reverse the dismissal of this count.

# Intrusion

With respect to the claim of Intrusion, the majority concludes dismissal of the claim was proper because the alleged intrusion was emotional—not physical— in nature. The majority draws on *Cullison*, an Indiana Supreme Court case: "Intrusion occurs when there has been an 'intrusion upon the plaintiff's *physical* solitude or seclusion as by invading his home or conducting an illegal search.'" Slip op. at 4 (emphasis added) (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). The majority then cites to *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, wherein this Court—not our supreme court—declined to recognize a claim of intrusion where the alleged intrusion was not physical in nature. 992 N.E.2d 859, 868-69 (Ind. Ct. App. 2013), *trans. denied*.

To the extent the majority reads *Cullison* as creating a requirement of physical intrusion, I respectfully disagree. The passage mentioning physical intrusion appears in a case involving allegations either chiefly physical in nature— entering a residence—or, as the Court determined, not actionable because the allegedly intrusive actions took place in public. *See Cullison*, 570 N.E.2d at 31. Further, in mentioning physical intrusion, the Court cited to a single treatise. Yet, the Restatement (Second) of Torts sets forth the elements necessary to allege intrusion: "One who intentionally intrudes, *physically or otherwise*, upon the solitude or seclusion of another or his private affairs or concerns, is subject

to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Section 652B (1977) (emphasis added); *cf. Munsell v. Hambright*, 776 N.E.2d 1272, 1283 (Ind. Ct. App. 2002) (noting that the tort of intrusion "arguably embraces intrusion into emotional solace"), *trans. denied*. Ultimately, although this Court has declined to identify a claim of non-physical intrusion, I do not read binding precedent as foreclosing such a claim. Thus, in light of the technological advances since *Cullison* was decided in 1991, I would follow the Restatement, which recognizes an actionable claim of intrusion "physically or otherwise," and I would reverse dismissal of this claim. *Cf. Felsher*, 755 N.E.2d at 595 (observing that "unique circumstances may 'give rise to the expansion of the . . . forms of tort liability for invasion of privacy.'" (quoting Restatement (Second) of Torts § 652A cmt. c (1977)).

# Outrage

Turning to the final claim at issue, I cannot say—as a matter of law—that F.B.C. failed to allege facts supporting a claim of Outrage. The parties trade arguments concerning whether sharing this information actually constituted a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Nevertheless, whether or not the defendants technically violated HIPAA or some other law, the common law has long-recognized social risk associated with the status of having a sexually communicable disease. *See, e.g.*, *Nichols v. Guy*, 2 Ind. 82, 82-83 (1850) (determining an allegedly defamatory

statement—that the plaintiff had "the clap"—was *per se* actionable without proof of special damages because "[t]he ground of the action for words of this description is the presumption that the party charged will be wholly or partially excluded from society by reason of the charge"). Here, the alleged disclosure did not mention whether F.B.C. tested positive or negative. Nevertheless, because of the sensitivity of this type of information, I cannot say—as a matter of law—the public would not be sufficiently outraged to learn that, without permission, an insurer disclosed that F.B.C. underwent a battery of tests for particular diseases: "HIV-1 AG W/HIV-1 & HIV-2 AB"; "CHYMD TRACH DNA"; "N. GONORRHOEAE DNA"; "ACUTE HEPATITIS"; "HERPES SIMPLEX"; and "HERPES SIMPLEX TYPE 2." App. Vol. 2 at 30.

[19] The majority endorses the alleged conduct as insurance-related and "routine in today's technologically-driven society." Slip op. at 6. Yet, it is not as though the defendants gave only general information to F.B.C.'s spouse, the primary policyholder—*e.g.,* that "lab testing" had occurred. Rather, it is the specificity of the information that, at this stage, provides adequate support for a claim of Outrage. *Cf.* Restatement (Third) of Torts § 46 cmt. e (2012) ("Although an actor exercising legal rights is not liable . . . merely for exercising those rights, the actor is not immunized from liability if the conduct goes so far beyond what is necessary to exercise the right that it is extreme and outrageous."). Indeed, at the very least, a reasonable fact-finder could conclude that the defendants acted recklessly by sharing such specific information without F.B.C.'s permission:

An actor acts recklessly when the actor knows of the risk of severe emotional harm (or knows facts that make the risk obvious) and fails to take a precaution that would eliminate or reduce the risk even though the burden is slight relative to the magnitude of the risk, thereby demonstrating the actor's indifference.

Restatement (Third) of Torts § 46 cmt. h (2012).

[20] Ultimately, the instant claim of Outrage is best left to a fact-finder. I would therefore affirm the denial of the Trial Rule 12(B)(6) motion as to this claim.

[21] For the foregoing reasons, I respectfully dissent.