## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2016, 6:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John William Davis, Jr.
Davis & Roose
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Alice J. Springer
Barnes & Thornburg LLP
Elkhart, Indiana

Timothy J. Abeska
Barnes & Thornburg LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jolena K. Plaut, Known Heir and Personal Representative of the Estate of Beulah Jane Enderle, a/k/a Beulah Jane Hunt, Deceased,

*Appellant-Defendant,*

v.

Wells Fargo Bank, N.A.,

*Appellee-Plaintiff.*

June 15, 2016

Court of Appeals Case No.
90A05-1509-MF-1390

Appeal from the
Wells Circuit Court

The Honorable
Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-1011-MF-107

**Kirsch, Judge.**

Wells Fargo Bank, N.A. ("Wells Fargo") filed an action to foreclose a mortgage on property ("the Property") located at 3079 N. 450 E., Bluffton, Indiana, which was owned by Beulah Jane Enderle ("Enderle") and her sister Annabel Snider ("Snider"), both now deceased.[1] Jolena K. Plaut ("Plaut"), known heir and alleged personal representative[2] of Enderle's estate, appeals the trial court's in rem foreclosure judgment in favor of Wells Fargo and raises the following restated and reordered issues:

> I. Whether the trial court erred in finding that Wells Fargo was the appropriate party to foreclose the mortgage on the Property; and

> II. Whether the trial court erred by granting summary judgment in favor of Wells Fargo when that decision rested, in part, on designated evidence that was improperly admitted into evidence.

We affirm.

---

[1] The following were also named as defendants in Wells Fargo Bank's foreclosure action: The Unknown Heirs and Devisees of Annabel Snider (the sister of Beulah Jane Enderle), Deceased, Capital One Bank (USA), N.A., Discover Bank, Mark T. Hunt, Jefferson W. Hunt, Gary W. Hunt, Marcy R. Hunt, and Ann Lee Zoll. However, none of those parties participated in this appeal.

[2] The caption includes the notation that Jolena K. Plaut is the personal representative of the estate of her mother, Beulah Jane Enderle. It is not clear whether that is correct. Wells Fargo alleges in its complaint that Plaut was named the personal representative of Enderle's estate under Cause Number 90C01-0708-ES-14, *Appellant's App.* at 7; however, during the summary judgment hearing, Plaut's counsel clarified that Plaut "was never appointed personal representative of the estate. She's an heir or devisee like her sister." *Tr.* at 15.

# Facts and Procedural History

[3] The relevant facts are largely undisputed. On September 27, 2004, Snider borrowed $48,300 from nBank, N.A. ("nBank") and executed and delivered to nBank a promissory note ("Note") in that principal sum. The loan was to be repaid over a period of thirty years, through monthly installments, at a fixed rate of interest of 6.5%, beginning November 1, 2004; "the principal and interest component of that installment payment was $305.29 per month." *Tr.* at 5. Under the terms of the Note, a single untimely payment would constitute default. *Appellant's App.* at 12. Subsequently, the Note was transferred from nBank to Wells Fargo, where it was "endorsed in blank," making it "payable to bearer."[3] *Appellant's Br.* at 8.

[4] Also on September 27, 2004, Enderle and Snider executed a mortgage ("the Mortgage"), using the Property as security for the repayment of the loan. The Mortgage described the Property as follows

> That portion of land situate [sic] in the Southeast Quarter of Section 14, Township 27 North, Range 12 East of the Second Principal Meridian in Wells County, Indiana, being described as follows: Co[n]sidering the West line of the Southeast Quarter as bearing North 00 degrees 00 minutes 00 seconds West with all other bearings herein contained relative thereto; Beginning at a found monument at the Southwest corner of the Southeast

---

[3] The Note was endorsed by nBank with the notation, "Pay to the Order of Wells Fargo Bank, N.A. Without Recourse, nBank, N.A." *Appellant's App.* at 13. A Wells Fargo Vice President of Loan Documentation endorsed the Note in blank with the following notation: "WITHOUT RECOURSE, PAY TO THE ORDER OF," and a blank space was placed after the word "OF." *Id.* at 14. Those endorsements made the Note payable to the bearer.

Quarter being the true place of beginning thence on the West line of the Southeast Quarter North 00 degrees 00 minutes 00 seconds West 649.00 feet to a set PK Nail; thence South 88 degrees 43 minutes 40 seconds East 335.60 feet to a set robar;[4] thence South 00 degrees 00 minutes 00 seconds West 649.00 feet to a set PK Nail on the South line of the Southeast Quarter; thence on said South line North 88 degrees 43 minutes 40 seconds West 335.60 feet to the true place of beginning, containing 5.00 acres and being subject to the right of way for County Roads 300 North and 450 East and being subject to 40.0 feet front side set backs on County Roads 450 East and 300 North and being subject to 20.0 foot side setbacks in the East and North sides and being subject to all easements and right of ways.[5]

*Appellant's App.* at 31. The Mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as both "Mortgagee" and "nominee" for nBank and its "successors and assigns." *Id*. at 17. In that capacity, MERS assigned the Mortgage to Wells Fargo in November 2010.

Enderle died on March 28, 2006. Under her will, Enderle's undivided one-half interest in the Property passed in fee simple absolute to her two surviving daughters, Plaut and Ann Lee Zoll ("Zoll"). *Id.* at 34. Enderle left nothing to the children of her predeceased son, Warner Hunt ("Hunt"). Snider died on July 31, 2010, without leaving a will. *Id*. at 33. Accordingly, through intestate

---

[4] In other descriptions, this was referred to as "a set rebar." *Appellant's App.* at 75.

[5] We note that there are two similar but not identical legal descriptions of the property located at 3079 N. 450 E., Bluffton. One description is found in the Mortgage, and the other one is found in the Affidavit in Aid of Title. *Appellant's App.* at 31, 33. The quoted language is the description contained in the Mortgage and is the Property at issue. *Id.* at 31.

succession, Snider's undivided one-half interest in the Property was divided as follows: one-third was transferred to Plaut, one-third to Zoll, and one-third was divided among Hunt's four children, Mark T. Hunt, Jefferson W. Hunt, Gary W. Hunt, and Marcy R. Hunt. At the time of this action, Plaut and Zoll each owned a five-twelfths interest in the Property, and Hunt's four children each owned a one-twenty-fourth interest in the Property.

[6] The last payment under the Note was made on July 1, 2010.[6] On September 12, 2010, Wells Fargo sent a thirty-day demand letter ("Notice of Default") to Snider at the Property. The Notice of Default informed Snider that the Note was in default, and if she did not act within thirty days, the payments on the Note would be accelerated. When Wells Fargo sent the Notice of Default, it was not aware that Snider was deceased. *Id.* at 97-98.

[7] In mid-November 2010, Wells Fargo, who by that time held both the Note and Mortgage, filed its Complaint on Note and to Foreclosure the Mortgage. With the trial court's permission, Wells Fargo filed an amended complaint in September 2012, followed one year later by a motion for summary judgment. Wells Fargo, however, withdrew that motion in February 2014, after our court

---

[6] Wells Fargo notes that this date is consistent with Snider having died before the August 1, 2010 payment was due. *Tr.* at 6.

handed down *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139 (Ind. Ct. App. 2013).[7]

[8] On April 21, 2014, Wells Fargo filed its Second Amended Complaint, alleging: Snider had executed the Note in the amount of $48,300; Enderle and Snider had entered into the Mortgage to secure repayment of the Note; Enderle and Snider had died on March 28, 2006 and July 31, 2010, respectively; no payments were made under the Note after July 1, 2010; the Note was in default, and Wells Fargo had accelerated the indebtedness due thereunder; and Wells Fargo was the holder of the Note and Mortgage. *Appellant's App.* at 6-8. Wells Fargo demanded

> [a]n in rem judgment against the mortgaged property in a sum to be determined by the [trial c]ourt, consisting of the outstanding unpaid principal balance, together with interest from and after the date of default at the rate of 6.5% per annum, late charges, default-related expenses and advances, reasonable attorneys' fees and costs of this action, and other expenses incurred in connection with this cause.

*Id.* at 9. Plaut filed her Answer and Affirmative Defenses on April 24, 2014.

---

[7] In *Seth v. Midland Funding*, LLC, 997 N.E.2d 1139, 1140 (Ind. Ct. App. 2013), our court discussed the designated evidence necessary to make a prima facie case in support of summary judgment in favor of a creditor claiming breach of a credit card contract. Wells Fargo, apparently, believed that its initial affidavit in support of summary judgment fell short of the standards set forth by the *Seth* court.

Wells Fargo filed a Motion for Summary and Default Judgment Entry and Decree of Foreclosure in October 2014.[8] *Id.* at xiv, 42-44. In addition to its memorandum in support thereof, Wells Fargo submitted the following designated evidence: (1) the Note endorsed in blank; (2) the recorded Mortgage; (3) the recorded Assignment of Mortgage; (4) the recorded Affidavit in Aid of Title; (5) the recorded Personal Representative's Deed; (6) proof of Service by Publication; (7) Affidavit Regarding Possession of Original Promissory Note; (8) Affidavit in Support of Judgment ("the Blalock Affidavit"), made by Karen Blalock, Wells Fargo's Vice President of Loan Documentation; and (9) Non-Military Affirmation and Affidavit of Attorney's Fees and Costs ("the Titus Affidavit"), *id.* at 64-67, made by Wells Fargo's attorney, Leanne Titus.

[10] The Blalock Affidavit stated that Wells Fargo was owed a total of $62,727.22 under the Note, which represented principal, interest due for the period from July 1, 2010 to September 25, 2014, insurance and tax disbursements, and fees for property inspections and preservation. *Id.* at 60. Attached to the Blalock

---

[8] Wells Fargo did not personally serve the motion for summary judgment on co-defendants Jefferson Hunt and Marcy Hunt, an omission that Plaut suggests prevents this court from considering Wells Fargo's motion. *Appellant's Br.* at 1 n.1. We disagree. First, we note that Jefferson and Marcy knew of the suit. In fact, prior to the filing of the motion for summary judgment, Jefferson and Marcy each filed with the trial court a written pro se response to the Second Amended Complaint. In Jefferson's May 1, 2014 response, he specifically stated that he had been named an heir in connection with the Property, but that he had "no reason to oppose the foreclosure." *Appellant's App.* at 40. In Marcy's July 14, 2014 response, she stated that she had "no interest in the claim of the mortgaged property or the debit [sic] that Annabel Snider had accrued." *Id.* at 41. In light of these responses, neither party would have opposed Wells Fargo's motion for summary judgment.

Affidavit, and referred to as Exhibit A, was a document titled, "Judgment Quote," which Blalock offered as the business records ("the Business Records") that she used to calculate the amounts due under the Note. *Id*. at 59, 61-63. The Blalock Affidavit also stated that a copy of the Notice of Default was attached as Exhibit B. *Id*. at 60.[9] The Titus Affidavit affirmed that, in addition to the amount described in the Blalock Affidavit, Wells Fargo was entitled to recover reasonable attorney fees and fees and costs incurred in connection with the foreclosure action. Considering the Blalock Affidavit and the Titus Affidavit, the total sum due to Wells Fargo was $67,830.02.[10]

[11] In November 2014, Plaut filed a response to Wells Fargo's motion for summary judgment. Plaut offered no designated evidence; instead, she highlighted deficiencies in Wells Fargo's designated evidence—deficiencies she claimed precluded summary judgment—and objected to the summary form of Blalock's Business Records. *Appellant's App.* at 77-88. Plaut alleged that, while Wells Fargo had offered into evidence the Note, the Mortgage, and Assignment of Mortgage as designated evidence, the trial court should not have considered these documents because Wells Fargo had failed to establish the authenticity or

---

[9] While Wells Fargo had inadvertently failed to attach Exhibit B, the company later submitted the Notice of Default as Exhibit B by means of supplemental designated evidence. *Id*. at 95.

[10] In her brief, Plaut cites to the trial court's finding that Wells Fargo was owed $952.99 for publication costs. She notes, however, that proof of publication attached to Wells Fargo's motion for summary judgment supported an amount of only $266.59. *Appellant's Br*. at 7. Plaut made no argument regarding this discrepancy either here or before the trial court; accordingly, that issue is waived, and the trial court's finding of $952.99 stands. *Salsbery Pork Producers, Inc. v. Booth*, 967 N.E.2d 1, 3 n.1 (Ind. Ct. App. 2012).

admissibility of any of those documents. *Id*. at 78. Plaut also maintained that Wells Fargo had not submitted a copy of the Notice of Default, which was referred to in the Note as a condition precedent to acceleration of the indebtedness. *Id*.

[12] That same day, Plaut also filed a motion to strike Wells Fargo's designated evidence. Pertinent to this appeal, Plaut argued that the trial court should strike: (1) the Business Records for lack of foundation; (2) the language in the Blalock Affidavit and the Titus Affidavit concerning possession of the Note on the basis of hearsay; and (3) the Note, Mortgage, and Assignment of Mortgage for lack of evidence establishing authenticity and admissibility. *Id*. at 78, 89-90. Plaut, however, did not contest that the Note and Mortgage were executed. In fact, Plaut admitted that Snider signed the Note and that Snider and Enderle signed the Mortgage. *Appellant's Br*. at 4, 5.

[13] In December 2014, Wells Fargo filed its Combined Response to Defendant's Motion to Strike and Reply in Support of its Motion for Summary Judgment. *Appellant's App.* at 91-96. Recognizing that Wells Fargo had, indeed, failed to attach the Notice of Default as Exhibit B to the Blalock Affidavit, Wells Fargo submitted that document to the trial court as supplemental designated evidence, asking the trial court to include it as Exhibit B to the Blalock Affidavit. *Id*. at 95, 97, 99.

[14] On February 11, 2015, in a minute entry, the trial court denied Plaut's Motion to Strike Wells Fargo's designated evidence. *Id*. at 102. About one month

later, the trial court held a hearing on Wells Fargo's Motion for Summary Judgment, during which Plaut made an oral motion to reconsider the denial of the Motion to Strike. When no action was taken to reconsider the Motion to Strike within five days, that motion was deemed denied in accordance with Trial Rule 53.4(B) on April 2, 2015. On May 29, 2015, the trial court entered an *in rem* judgment in favor of Wells Fargo on its Motion for Summary Judgment. *Id*. at 2.

[15] Plaut filed a Motion to Correct Error on June 26, 2015. The trial court denied that motion on September 8, 2015; however, that motion had already been deemed denied pursuant to Indiana Trial Rule 53.3(A), on August 10, 2015, which was forty-five days after the motion was filed.[11] Plaut now appeals.

## Discussion and Decision

[16] Plaut appeals from the trial court's denial of her motion to correct error. Our standard of review in such cases is well established. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *McEntee v. Wells Fargo Bank, N.A.*, 970 N.E.2d 178, 182 (Ind. Ct. App. 2012); *Town of Plainfield v. Paden Eng'g Co.*, 943 N.E.2d 904, 908 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic

---

[11] Wells Fargo filed an Assignment of Judgment on September 10, 2015, assigning its judgment to the Federal Home Loan Mortgage Corporation. *Appellant's Br*. at 3. This assignment is not an issue in this appeal.

and effects of the facts and circumstances before it or the reasonable inferences therefrom. *McEntee*, 970 N.E.2d at 181.

[17] Here, the motion to correct error sought to set aside the entry of summary judgment. We review a trial court's grant of summary judgment under the same standard as the trial court. *Id*. (citing *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)). The purpose of summary judgment is to terminate litigation about which there can be no genuine issue of material fact and that may be determined as a matter of law. *Regalado v. Estate of Regalado*, 933 N.E.2d 512, 518 (Ind. Ct. App. 2010). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012), *trans. denied*. We consider only those matters properly designated pursuant to Trial Rule 56 and construe all factual inferences and resolve all doubts as to the existence of a material issue in favor of the non-moving party. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 424 (Ind. 2015). A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *FLM*, 973 N.E.2d at 1173.

[18] Plaut contends that Wells Fargo did not satisfy its burden of making a prima facie showing that there are no genuine issues of material fact and that Wells Fargo is entitled to summary judgment as a matter of law. In particular, Plaut raises two claims; first, that the trial court erred in finding that Wells Fargo was the party entitled to enforce the Note, and second, that the trial court erred in

admitting and considering the Blalock Affidavit, which Plaut argues contains inadmissible hearsay.

# I.  Holder of the Note

[19]   Plaut asserts there is a genuine issue of material fact regarding whether Wells Fargo is the real party in interest and, therefore, entitled to enforce the Note. Indiana has adopted Article 3 of the Uniform Commercial Code, which governs negotiable instruments. *Lunsford v. Deutsche Bank Trust Co. Americas*, 996 N.E.2d 815, 821 (Ind. Ct. App. 2013).  It is well-established that a promissory note secured by a mortgage is a negotiable instrument.  *Id.* (citing *First Valley Bank v. First Sav. & Loan Ass'n of Cent. Ind.,* 412 N.E.2d 1237, 1240-41 (Ind. Ct. App. 1980)).  The issuer of a note is obliged to pay a negotiable instrument according to its terms "to a person entitled to enforce the instrument."  Ind. Code § 26-1-3.1-412.  "Person" includes an individual or an organization.  Ind. Code § 26-1-1-201(3).  A person entitled to enforce an instrument means (1) "the *holder* of the instrument," or (2) "a nonholder in possession of the instrument who has the rights of a holder."  Ind. Code § 26-1-3.1-301 (emphasis added).  "Holder" is defined as "the person in possession of a negotiable instrument that is payable either to *bearer* or to an identified person if the identified person is in possession of the instrument."  Ind. Code § 26-1-1-201(20)(a) (emphasis added).  And "bearer" means, in relevant part, "the person . . . in possession of a negotiable instrument ... payable to bearer or endorsed in blank." I.C. § 26-1-1-201(5)(B).

[20] Our court addressed a similar issue in *Lunsford*. There, the owner of real estate executed a promissory note to Homecomings Financial Network. *Lunsford*, 996 N.E.2d at 817. The promissory note was secured by a mortgage that same day. *Id*. at 818. Homecomings endorsed the note to Residential Funding Corporation, who endorsed the note to Deutsche Bank as trustee. The mortgage was recorded and MERS, as nominee for Homecomings, assigned the mortgage to Deutsche Bank, as trustee. *Id*. at 822. Deutsche Bank produced the original note and mortgage for inspection at the summary judgment hearing. Accordingly, our court found that Deutsche Bank was a holder, entitled to enforce the loan documents. *Lunsford,* 996 N.E.2d at 818.

[21] Under almost identical facts, Wells Fargo's designated evidence in support of its motion for summary judgment included a recorded copy of the Note, of the Mortgage, and of the Assignment of Mortgage. *Appellant's App.* at 11-14, 16-29, 32. The Note, which reflected Snider's $48,300 loan from nBank, was subsequently transferred from nBank to Wells Fargo. *Appellant's App*. at 13, 14. Wells Fargo, in turn, endorsed the Note in blank, which made the Note payable to the bearer. *Id*. at 14. Wells Fargo's counsel presented the original Note and Mortgage for inspection at the March 26, 2015 hearing on summary judgment. [12] *Tr*. at 6, 11. The Assignment of Mortgage, reflected that MERS, as nominee

---

[12] Plaut argues that the evidence was insufficient to prove that Wells Fargo was the Holder of the Note entitled to enforce it, first because Blalock's affidavit regarding Wells Fargo's possession was not based on personal knowledge and, second, because Titus's affidavit as to Wells Fargo's possession was hearsay. Finding that Wells Fargo's presentment of the original Note to the trial court was sufficient to prove its possession, we need not address these claims.

for nBank, had assigned the mortgage to Wells Fargo.[13] Because the instant case mirrors the facts in *Lunsford*, we conclude that Wells Fargo was a holder of the Note and Mortgage entitled to enforce the loan documents. *See Buchanan v. HSBC Mortg. Servs.*, 993 N.E.2d 275 (Ind. Ct. App. 2013) (by presenting a note endorsed in blank, HSBC demonstrated that it was holder of bearer instrument and was entitled to enforce the note), *trans. denied*.

[22] Plaut further offers that Wells Fargo may be in possession of the Note as a servicing agent rather than the actual holder, suggesting that Wells Fargo is not the real party in interest. We are unconvinced. The evidence shows not only that Wells Fargo is in possession of the original Note but also that the original Note was endorsed to Wells Fargo by nBank. As we stated in *Collins v. HSBC Bank USA, National Ass'n*, 974 N.E.2d 537, 542 (Ind. Ct. App. 2012), "There exists no better evidence to establish that [Wells Fargo] is the present holder of the note entitled to enforce the note under Indiana law." Under these circumstances, we conclude that there was no genuine issue of material fact that Wells Fargo was the holder of the Note entitled to enforce the loan documents.

---

[13] Notwithstanding Plaut's suggestions to the contrary, the Mortgage and Note were clearly "associated." *Tr.* at 11-12. The Assignment of Mortgage specified that Snider and Enderle had executed the Mortgage to secure a note, dated September 27, 2004, and in the amount of $48,300, details that mirrored those of the Note. The fact that Enderle signed only the Mortgage and not the Note is not unusual. In fact, the Mortgage contemplated this situation by providing that a co-signer of the Mortgage, who does not also sign the Note, is not obligated to pay the sums owed on the Note. *Appellant's App.* at 25.

## II. Designated Evidence

[23] A party filing for summary judgment has the initial burden of both production and proof. "Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Robbins v. Trs. of Ind. Univ.*, 45 N.E.3d 1, 6 (Ind. Ct. App. 2015). "If the moving party meets this burden, the burden then shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial." *Id.* "If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion." *Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. Ct. App. 2011), *trans. denied*. "'An appellate court may affirm summary judgment if it is proper on any basis shown in the record.'" *Id.* (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 408-09 (Ind. 2011)).

[24] "The Indiana Code provides, 'if a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assign may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage.'"[14] *McEntee*, 970 N.E.2d at 182 (quoting Ind. Code § 32-30-10-3(a)). "To establish a prima facie

---

[14] Effective July 1, 2016, a mortgagee or its assign will be able to proceed not only in the circuit court of the county where the property is located, but also in the superior court or the probate court. 2016 Ind. Legis. Serv. P.L. 84-2016 (H.E.A. 1322) (WEST).

case that it is entitled to foreclose upon the mortgage, the mortgagee or its assign must enter into evidence the demand note and the mortgage, and must prove the mortgagor's default." *Id.* Once the mortgagee establishes its prima facie case, the burden shifts to the mortgagor to show that the note has been paid in full or to establish any other defenses to the foreclosure. *Id.*

[25] Here, Wells Fargo submitted the following designated evidence in support of summary judgment: the Note endorsed in blank, which showed that Snider had borrowed money from nBank who had, in turn, assigned the Note to Wells Fargo; the Mortgage, which showed that Snider and Enderle had each agreed to provide the Property as collateral for the Note; the recorded Assignment of Mortgage from MERS to Wells Fargo, which showed that Wells Fargo was in possession of the Mortgage; the Blalock Affidavit and Business Records; and the Notice of Default. The Blalock Affidavit and the Titus Affidavit, together, set forth that Wells Fargo was owed $67,830.02, as of September 25, 2014, in connection with the default on the Note. This amount included principal due on the Note, interest due on the principal, attorney fees, and costs for taxes, insurance, and filing fees. This designated evidence established a prima facie case that Wells Fargo was entitled to foreclose on the Mortgage to recover $67,830.02. The burden then shifted to Plaut to dispute the amount due, show that the Note had been paid in full, or establish any other defenses to the foreclosure. *McEntee*, 970 N.E.2d at 182. Plaut, however, offered no designated evidence. Instead, she chose to attack, by means of a motion to strike, the admissibility of: (1) the Note and Mortgage, challenging their

authenticity; and (2) the Blalock Affidavit and attached Business Records, claiming they were inadmissible hearsay. This strategy failed, however, when the trial court denied Plaut's motion to strike Wells Fargo's designated evidence.

On appeal, Plaut neither challenges the existence or authenticity of the Note or Mortgage, nor does she contest that monthly payments under the Note ceased. In other words, she does not challenge that the Note and Mortgage are in default. Instead, she claims that summary judgment should not have been granted in favor of Wells Fargo because there was insufficient admissible evidence to support the trial court's determination regarding "the components and the amounts of mortgage indebtedness." *Appellant's Br.* at 10. Plaut does not object to the Titus Affidavit, which sets forth that Wells Fargo is owed $240.00 for "total private service of process costs," $275.00 for the "cost of title evidence," the sum of $13.31 for mailing expenses, and $3,322.50 for attorney fees. *Appellant's Br.* at 12; *Appellant's App.* at 66. Nor does she contest that Wells Fargo is owed $286.00 for filing fees and $13.00 for Sheriff's service fee.

Plaut does object, however, to the trial court's use of the Blalock Affidavit to calculate the amount owed to Wells Fargo in connection with the mortgage foreclosure. In her sworn affidavit, Blalock stated:

> I am a Vice President of Loan Documentation [for] Wells Fargo Bank, N.A., the servicer of the mortgage (hereinafter Wells Fargo). In the regular performance of my job functions, I am familiar with the business records maintained by Wells Fargo for the purpose of servicing mortgage loans. These records . . . are

made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of business activity conducted regularly by Wells Fargo. It is the regular practice of Wells Fargo's mortgage servicing business and activities to make these records. In connection with making this Affidavit, I have acquired personal knowledge of the matters stated herein by personally examining these business records for loan number XXXXXX6068 (the "mortgage loan"). A genuine and authentic copy of the business records upon which this [A]ffidavit is based are attached hereto as Exhibit "A."

*Id.* at 59. Wells Fargo's Business Records, which were attached to the Blalock Affidavit, identified the components of the indebtedness due, including $44,545.70 in principal, $12,254.89 in interest from July 1, 2010 through and including September 25, 2014, and $5,926.63, to cover the costs of disbursements for hazard insurance, tax disbursements, and property inspections. *Id*. at 60, 61-63. Plaut contends that the Blalock Affidavit should not have been considered because it did not conform to the reasoning of *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139 (Ind. Ct. App. 2013).

[28] We find that a discussion of *Seth*, particularly its analysis and findings regarding affidavits of money owed, is relevant and helpful to our discussion of the issues before us today. In *Seth*, the trial court granted summary judgment in favor of Midland Funding, LLC ("Midland") on Midland's complaint against Seth for non-payment of credit card debt. *Seth*, 997 N.E.2d at 1140. To make a prima facie case, Midland had to show that Seth opened a credit card account with Columbus Bank and Trust, that Seth owed Columbus Bank the amount alleged

in the complaint, and that Midland was the assignee of that alleged debt. *Id.* In support of summary judgment, Midland designated an Assignment of Accounts; an affidavit of Andrew Carlson, a manager for Jefferson Capital Systems; an Affidavit of Debt executed by Erin Degel, an employee of Midland Credit Management, which was the servicing agent for Midland; and uncertified and unsworn copies of a document titled Transaction History, a credit card statement, terms of a credit card agreement, and an untitled document with "field data." *Id.* 1140-41. From this designated evidence, the trial court found no genuine issue of material fact and granted summary judgment in favor of Midland.

[29] On appeal, Seth argued that Midland had not satisfied its burden of making a prima facie showing that there was no genuine issue of material fact. *Id.* at 1140. Specifically, Seth maintained that the Carlson affidavit and the Degel affidavit—the only designated evidence that the *Seth* court found was "potentially proper Rule 56 evidence"--were based on inadmissible hearsay or otherwise insufficient to support summary judgment. Of those two affidavits, only the Degel affidavit is pertinent to this appeal.[15] In her affidavit, Degel relied on transactions made by Columbus and Jefferson and a review of

[15] The Carlson affidavit affirmed that certain credit card accounts issued by Columbus Bank were subsequently transferred to CompuCredit Corporation, who in turn transferred them to Jefferson Capital. Jefferson "subsequently sold *many of the accounts* to Midland." *Seth*, 997 N.E.2d at 1141 (emphasis added). While conceding that this evidence proved that Midland acquired "certain" accounts issued by Columbus Bank, the *Seth* court concluded that, because Seth's name and account number were absent in Carlson's affidavit and attached exhibit, this designated evidence was insufficient to prove that Midland was the proper party to sue *Seth* for the amount due on that specific credit card. *Id.* at 1141-42.

unspecified business documents to conclude that Seth owed Midland $3,410.87 in unpaid credit card debt. On appeal Seth asserted that this sum was based on inadmissible hearsay and could not be considered due to noncompliance with Trial Rule 56(E).

[30] "The requirements of T.R. 56(E), including the requirement that supporting and opposing affidavits shall be made on *personal knowledge*, are mandatory." *City of Gary v. McCrady*, 851 N.E.2d 359, 365 (Ind. Ct. App. 2006) (emphasis added). The *Seth* court found that Degel's status as an employee of Midland's servicing agent did not establish that she had personal knowledge pertinent to Midland's complaint against Seth and, therefore, concluded that Degel's affidavit should not have been relied on to calculate Seth's outstanding debt. *Seth*, 997 N.E.2d at 1142. Degel's affidavit also fell short because Degel's knowledge of the facts and the amounts owed by Seth was limited to "what she had gleaned from her review of unspecified business records." *Id*. Accordingly, the *Seth* court found that Degel's affidavit was based entirely on inadmissible hearsay—hearsay that even the business records exception under Indiana Evidence Rule 803(6) could not salvage.[16] *Id*. at 1143. Disregarding the inadmissible hearsay evidence contained in the Degel affidavit, the *Seth* court concluded that Midland had failed as a matter of law to make a prima facie case

---

[16] Degel did not attach to her affidavit a copy of the business records that she consulted in arriving at Seth's debt. Further, the *Seth* court found that the documents did not satisfy the business records exception, pursuant to Evidence Rule 803(6), because Degel's affidavit did "not purport to authenticate any business records, which is the sole function of that exception. *Seth*, 997 N.E.2d at 1143.

that it was entitled to summary judgment on the complaint. *Id*. The *Seth* court reversed the trial court's grant of summary judgment in favor of Midland.

[31] The instant case is distinguishable from *Seth*. Under Indiana Trial Rule 56(E), it was necessary that Blalock's Affidavit: was made on personal knowledge; set forth such facts as would be admissible in evidence; and showed affirmatively that Blalock was competent to testify to the matters stated therein. Blalock stated that she was the Vice President of Loan Documentation for Wells Fargo and that in the regular performance of her job functions she was familiar with the business records maintained by Wells Fargo for the purpose of servicing mortgage loans. *Appellant's App.* at 59. Blalock also affirmed that she had acquired personal knowledge of the sums itemized in her affidavit by personally examining the attached business records relating to the loan. *Id*. Unlike Degel's affidavit in *Seth*, Blalock's Affidavit, regarding amounts due, was based on her personal knowledge as a Vice President of Loan Documentation.

[32] Also, unlike in *Seth*, Blalock attached to her affidavit the Business Records upon which she relied. Plaut argues that the Business Records attached to Blalock's Affidavit constituted hearsay, did not qualify for admission under the business records exception, and should have been excluded. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Ind. Evidence R. 801(c). Hearsay is inadmissible unless it falls under a recognized exception. Evid. R. 802. Among the numerous exceptions to the hearsay rule is the business records exception, which provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6).

[33]  In this case, Blalock's Affidavit affirmed that the Business Records were "made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of business activity conducted regularly by Wells Fargo. It is the regular practice of Wells Fargo's mortgage servicing business and activities to make these records." *Appellant's App.* at 59. The trial court

reasonably believed that the Business Records were made in the ordinary course of Wells Fargo's business of enforcing a loan in default and that, as Vice President of Loan Documentation, Blalock was qualified to set forth the amount due under the Note and Mortgage. Here, there is no evidence that the source of the information and the method and circumstances of the preparation of the Business Records suggest a lack of trustworthiness.[17]

[34] Plaut takes issue with the fact that that the Business Records provide no evidence of charges or credits made before July 1, 2010 and that a lump sum claim for interest in the amount of $12,254.89 was charged for the time period after July 1, 2010. The Note reflected that Snider borrowed $48,300, to be paid at 6.5% interest over thirty years. The first payment was made on November 1, 2004, and the last payment was made on July 1, 2010. Amortized over thirty years, the amount of each monthly installment payment was $305.29. These payments did not include escrow for property tax or insurance; instead, the payments reflected repayment of only the principal and interest. Wells Fargo does not allege that Snider missed payments prior to July 1, 2010, and Plaut does not allege that Snider made additional payments. Under the facts before us, the amount due on the Note appears to have been calculated by running the numbers through an amortization schedule and thereby determining interest owed. We conclude that Wells Fargo designated sufficient evidence to

---

[17] Plaut argues that the Business Records were an improper summary under Indiana Rule of Evidence 1006. We need not reach this issue because Wells Fargo did not offer this document as a summary, but instead, offered them under the business records exception.

establish that the Note is in default and that Plaut failed to designate any evidence that might excuse that default. The trial court properly granted summary judgment in favor of Wells Fargo.

[35] Affirmed.

Mathias, J., and Brown, J., concur.