**Jane DOE, a minor in her own behalf, Appellant–Plaintiff,**

v.

**LAFAYETTE SCHOOL CORPORATION, Appellee–Defendant.**

No. 79A02–0507–CV–613.

Court of Appeals of Indiana.

May 1, 2006.

Rehearing Denied June 27, 2006.

---

Courtney B. Justice, Justice Law Offices, Delphi, Joleen V. Klotz, James O. McDonald, Everett, Everett, & McDonald, Terre Haute, for Appellants.

Joseph M. Dietz, Meils Thompson Dietz & Berish, Indianapolis, for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Plaintiff, Jane Doe (Doe), a minor in her own behalf, appeals the trial court's grant of summary judgment in favor of Appellee–Defendant, Lafayette School Corporation (LSC).

We reverse in part, affirm in part, and remand.

*ISSUES*

Doe raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred in determining that LSC, as a matter of law, was not negligent in failing to

protect Doe from a teacher's misconduct; and

(2) Whether the trial court erred in determining that LSC was not vicariously liable for the criminal conduct of one of its teachers under the doctrine of respondeat superior.

## FACTS AND PROCEDURAL HISTORY

In the spring semester of 2001, Doe, fifteen years old at the time, was a student in, Troy Cole's (Cole), freshmen algebra class at Jefferson High School (JHS), part of LSC, in Tippecanoe County, Indiana. Cole was twenty-eight years old. On the first day of class, Cole gathered email addresses from his students in order to communicate with them about homework and other matters. Cole and Doe subsequently engaged in regular email exchanges. Then, midway through the semester, Cole advertised in an email to his students that he and his wife were looking for a babysitter for their infant daughter. Doe responded, and soon thereafter began babysitting for the Coles regularly.

Following the end of the semester, even though Doe was no longer a student in Cole's class, the two continued to email one another, and Doe continued to baby-sit Cole's daughter. Then, in the spring of 2002, while Doe was still a student at JHS, the interaction between them took on a romantic tone, and the email exchanges between them became sexually charged. In emailing Doe, Cole used a personal email account, however he regularly sent the emails by way of an LSC-provided laptop computer. It is also apparent from the record that some of the pair's emails were sent during school hours.

In March of 2002, two JHS students confided in another teacher that Cole was excessively emailing a particular female student. As a result, the teacher informed Vice Principal Maurie Denney (Denney), who then briefly questioned Cole about his use of email with students, and a concern that he was being "too friendly" with students. (Appellee's Brief p. 7). In particular, Cole was often seen hugging Doe and other students in the hallway during school. However, satisfied with a promise by Cole to be more careful about his contact with students, Denney did not further investigate the concerns at that time, even though Doe's name was specifically raised.

Two months later, in May of 2002, the relationship between Doe and Cole escalated to a physical level. Particularly, on May 3 and May 8, 2002, Cole performed oral sex on Doe in the basement of his residence. After these incidents, Doe told a couple of her friends what had occurred, and her friends reported the information to school officials. Following an investigation, criminal charges were filed against Cole. As a result, on July 11, 2003, Cole was convicted of child seduction and engaging in deviate sexual conduct, pursuant to Ind.Code § 35-42-4-7. This appeal, however, is the consequence of a civil negligence claim filed by Doe following Cole's conviction.

On July 15, 2003, Doe filed a Complaint for Damages against LSC, LSC's Superintendent, Ed Eiler (Eiler), and various Jefferson High School officials, including Principal Vince Bertram (Bertram), Denney, and Cole. In her complaint, Doe primarily alleges that LSC and the named officials were negligent in monitoring Cole's relationships with students, and that she suffered emotional distress as a result. Additionally, Doe claims that once LSC and its officials had knowledge of Cole's misconduct, they were negligent in their handling of the matter. Ultimately, Doe's complaint alleges that the acts and omissions of LSC, Eiler, Bertram, and Denney constituted a breach of their duty of care and supervision, and were "a direct and

proximate cause of [her] pain, suffering, emotional distress, humiliation, embarrassment and mental anguish." (Appellant's App. p. 30).

On April 21, 2004, Denny was dismissed from the cause of action. On June 2, 2004, LSC, Eiler and Bertram filed a Motion for Summary Judgment. Thereafter, on June 15, 2004, the trial court permitted Doe to amend her complaint to add Cole's insurance carrier, United Farm Family Mutual Insurance Company (United Farm), to the action. On May 27, 2005, the trial court entered summary judgment in favor of LSC, and a separate summary judgment in favor of United Farm. Its summary judgment decision as to LSC, the only judgment at issue in this appeal, reads in pertinent part:

> This matter came before the [c]ourt for a hearing on February 23, 2005, on a Motion for Summary Judgment filed by [LSC], [Eiler], and [Bertram].... Having taken the matter under advisement, the [c]ourt now finds and rules as follows:

> By agreement of counsel at the start of the hearing on the Motion for Summary Judgment, [Eiler] and [Bertram] are hereby dismissed as individual defendants....

> The facts are not in dispute. [Cole], was charged with and convicted of the crime of child seduction, a Class D [f]elony, in Tippecanoe Superior Court. That conviction was by virtue of a plea of guilty entered by [Cole] on March 20, 2003.

> At the time of the crime, [Cole] was a teacher at [LSC]. [Doe] was a student at [LSC]. The criminal activity took place off school grounds and at a time when [Cole] was no longer a direct teacher of [Doe]. The current action is a negligence complaint against [LSC] for breach of a duty to protect [Doe] from the actions of [Cole].

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). The [c]ourt concludes that it is appropriate in the instant matter.

> The [c]ourt concludes that there is no duty from [LSC] to [Doe] based upon premises liability. The conduct in question took place off the property of [LSC] in the home of [Cole], a place where [LSC] had no authority or control. Without such authority or control[,] premises liability does not arise. [Harris v. Traini, 759 N.E.2d 215 (Ind.Ct. App.2001).]

> The [c]ourt similarly concludes that the doctrine of in loco parentis does not impose liability upon [LSC] under these facts. The duties and powers of a school corporation to supervise and discipline students are set out in the Indiana Code. [See I.C. 20–8.1–5.1]. However, in the instant matter, the conduct leading to the complaint by [Doe] took place off school grounds and was not related to any school function. The [c]ourt concludes that under those facts potential liability does not arise.

> The third possible liability of [LSC] is vicarious liability if [ ] Cole was within the scope of his employment at the time when the conduct occurred. As stated above, the conduct occurred at the home of [ ] Cole and was subsequently determined to be the criminal responsibility of [ ] Cole. Employer liability under the theory of respondeat superior does not apply when an employee is not acting within the scope of his employment, but rather acting on his own initiative. [City of Ft. Wayne v. Moore, 706 N.E.2d 604 (Ind.Ct.App.1999) ], is instructive with regard to that issue. There[,] the

[c]ourt of [a]ppeals observed that if it is determined that none of the employee's acts were authorized, there is no respondeat superior liability. In the instant matter it is clear to this [c]ourt that none of the actions taken by [ ] Cole were authorized in any sense by [LSC]. The [c]ourt therefore concludes that vicarious liability under the theory of respondeat superior does not apply.

Finally, the [c]ourt concludes that there is no liability under a theory of negligent hiring or retention for the reasons listed above. That is, the conduct complained of by [Doe] took place at [Cole's] home while he was not engaged in any school-related activity. Further, there is nothing before the [c]ourt to indicate that there was knowledge on the part of [LSC] regarding the criminal conduct of [ ] Cole.

[LSC] also asked the [c]ourt to rule in their favor because [Doe] was also negligent and could therefore not recover as a matter of law. In response, [Doe] asked the [c]ourt to conclude that contributory negligence is not possible as a matter of law given the criminal conduct of [ ] Cole to which consent is not a defense. Given the conclusions reached above with respect to the theories of liability presented to the [c]ourt, the [c]ourt declines to rule on the issue of contributory fault.

The [c]ourt determines that Summary Judgment in favor of [LSC] is appropriate. The Motion for Summary Judgment is granted.

(Appellant's App. pp. 15–18).

Doe now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *reh'g denied, trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Ritchhart v. Indianapolis Public Schools,* 812 N.E.2d 189, 191 (Ind.Ct.App.2004), *trans. denied.* If the moving party meets this burden, the burden then shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.* In our review, we consider all of the designated evidence in the light most favorable to the nonmoving party. *American Family Mut. Ins. Co.,* 764 N.E.2d at 783.

Additionally, we note that under Indiana law, "[m]erely alleging that the plaintiff has failed to produce evidence on each element ... is insufficient to entitle the defendant to summary judgment." *Dennis v. Greyhound Lines, Inc.,* 831 N.E.2d 171, 173 (Ind.Ct.App.2005), *trans. denied.* Our task is not to judge whether Doe has proven each element, but instead is to determine whether LSC has ade-

quately met its burden of proving a lack of any genuine issue of material fact in the evidence designated to the trial court. *See id.* Furthermore, we must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Illiana Surgery & Medical Center, LLC v. STG Funding, Inc.,* 824 N.E.2d 388, 396 (Ind.Ct.App. 2005).

## II. *Doe's Negligence Claim*

As previously stated, Doe alleges that LSC was negligent by failing to appropriately monitor Cole's interactions with students. Further, Doe alleges that LSC was negligent in removing her from class by use of a security guard, and then by questioning her about Cole in the absence of a parent.

■ Initially, we observe that to prevail on a theory of negligence, Doe must prove the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by that breach. *See McClyde v. Archdiocese of Indianapolis,* 752 N.E.2d 229, 232 (Ind.Ct.App.2001). In order for a defendant to prevail on a motion for summary judgment in a negligence action, as LSC did here, it must demonstrate that the undisputed material facts negate at least one of the elements essential to plaintiff's claim or that the claim is barred by an affirmative defense. *Id.* Additionally, we observe that because "negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence"—summary judgment is rarely appropriate. *Oxley v. Lenn,* 819 N.E.2d 851, 856–57 (Ind. Ct.App.2004) (quoting *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004)).

### A. *Duty of LSC*

Doe first argues that the trial court erred in ruling as a matter of law that LSC owed no duty to investigate the relationship between she and Cole, and ultimately protect her from Cole's sexual misconduct. In its summary judgment decision, the trial court found that LSC owed no duty to Doe under premises liability or the doctrine of *in loco parentis,* because Cole's misconduct primarily took place off school grounds. However, contrary to the trial court's focus on Cole's misconduct at his residence, we find that Doe's complaint alleges negligence by LSC in the performance of its duties *on school grounds.* In particular, Doe contends that LSC was negligent in failing to investigate her relationship with Cole in light of the fact that a school official had received a report that Cole was excessively emailing and being "too friendly" with students. (Appellee's Br. p. 7).

■ Thus, irrespective of the negligence theories addressed by the trial court, we find that Indiana recognizes a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of their students. *See McClyde,* 752 N.E.2d at 232. In particular, Indiana courts have imposed a standard of care that is the level of care an ordinary, prudent person would exercise under the same or similar circumstances. *Id.* However, we also emphasize that "schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Id.* (quoting *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 706 (1974)). In addition, we also note that a statutory duty is imposed upon school corporations by I.C. § 20-33-8-8, which provides in pertinent part that "[s]tudent supervision and the desirable behavior of students in carrying

out school purposes is the responsibility of ... a school corporation ..."

■ Here, as previously mentioned, the trial court found that LSC owed no duty to protect Doe from Cole's conduct because it had no authority or control over Cole off school premises. Yet, in *Mangold ex rel. Mangold v. Indiana Dept. of Natural Resources,* 756 N.E.2d 970, 973 (Ind.2001), our supreme court held that on a complaint for negligence, the common law duty of care that a school owes its students is not dependent upon whether an injury a student suffers occurs on school property. Thus, we cannot agree that LSC escapes all potential negligence liability because *part* of Doe's alleged harm, in particular the harm caused by Cole's sexual acts, occurred off school property. Therefore, even though we are mindful that the sexual acts' occurring off school grounds may have a bearing on the foreseeability component of proximate causation, we ultimately find that LSC owed a general duty of reasonable care and supervision to its student, Doe. *See id.* at 975; *see also Roe v. North Adams Community School Corp.,* 647 N.E.2d 655, 660 (Ind.Ct.App.1995), *reh'g denied, trans. denied* ("[t]he duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty") (quoting *Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 574 (Ind.Ct.App. 1986), *reh'g denied, trans. denied* ).

Consequently, because we find that the first element of Doe's negligence claim—duty—is satisfied, we take our discussion

beyond the scope of the trial court's opinion. Accordingly, as directed by *Mangold,* we now shift our analysis to whether the facts of the present case constitute a breach of LSC's general duty to exercise reasonable care and supervision for its students.[1] *See Mangold,* 756 N.E.2d at 974–75.

### B. Breach of LSC's Duty

■ While the existence of duty is a matter of law for the court to decide, a breach of that duty, which requires a reasonable relationship between the duty imposed and the act alleged to have constituted the breach, is usually a matter left to the trier of fact. *Mangold,* 756 N.E.2d at 975. Only when the facts are undisputed and lead to but a single inference or conclusion may a trial court determine as a matter of law whether a breach of duty has occurred. *Id.* Accordingly, as applied to the facts in this case, the question is whether LSC breached its duty of reasonable care and supervision to Doe by failing to investigate Cole's emails to her, and relationship with her.

As previously mentioned, our review of the facts most favorable to Doe shows that prior to the sexual incidents that occurred on May 3 and 8, 2002, another teacher at JHS expressed concerns to Denney that Cole was engaging in excessive email communications with a student. Thereafter, Denney met with Cole and advised Cole to limit his email use, as well as tame down his overt physical nature, with students. No further investigation of the concerns about Cole took place until after the sexual

---

1. While the duty imposed upon Indiana schools to protect their students was formerly defined by the specific circumstances of each case, *Mangold* declared that, "[a]n approach that focuses on rearticulating [a school's] duty based upon a given set of facts is misplaced ... because to do so presupposes that an issue which is thought to be settled must be

revisited each time a party frames the duty issue a little differently." *Mangold,* 756 N.E.2d at 974. Accordingly, we decline the invitation to explicitly define the duties a school corporation owes to its students, beyond the general duties laid out in I.C. § 20–33–8–8.

contact between Doe and Cole was reported in May.

Additionally, the record indicates that LSC had a policy in place that would have allowed school officials to review files on Cole's computer. Whether the particular concern brought to school officials warranted a look at Cole's computer is not a question appropriately answered by this court. In fact, our evaluation of these facts leads us to conclude that reasonable persons could differ as to whether there is a sufficient relationship between LSC's general duty to supervise its students and its failure to follow up on the concerns about Cole's email use with his students. *See Patterson v. Seavoy*, 822 N.E.2d 206, 213 (Ind.Ct.App.2005); *see also Mangold*, 756 N.E.2d at 975. Thus, we find that whether LSC breached its duty is more appropriately a question for the trier of fact. *See Patterson*, 822 N.E.2d at 213.

Nonetheless, we note LSC's argument in this respect that even if it breached its general duty to exercise reasonable care, Doe's negligence claim is barred because she was contributorily negligent. While LSC is correct that under the Indiana Tort Claims Act, the common law still applies and contributory negligence acts as a bar to a plaintiff's recovery against government actors, contributory negligence is also generally a question of fact. *See City of Crawfordsville v. Price*, 778 N.E.2d 459, 462 (Ind.Ct.App.2002). It is only a question of law when the trial court can say that no reasonable person would have acted as the plaintiff did under the circumstances. *Northern Indiana Public Service Co. v. East Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1075 (Ind.Ct. App.1992).

In the instant case, Doe was fifteen years old when her relationship with Cole began. Even though children over the age of fourteen are chargeable with exercising the standard of care of an adult, we cannot state with certainty that no reasonable person would have acted as Doe did here under the circumstances. *Mangold*, 756 N.E.2d at 976. Thus, we decline to find as a matter of law that Doe's acquiescence to Cole's seduction constituted contributory negligence.

### C. *Injury Proximately Caused by LSC*

In the event that LSC did breach its general duty of care to Doe, we now address the final component of negligence, whether such a breach was the proximate cause of Doe's injuries. Here, Doe asserts that as a result of LSC's negligence she endured "pain, suffering, emotional distress, humiliation, embarrassment and mental anguish." (Appellant's App. p. 31). Specifically, Doe claims that LSC directly caused such injuries by having a security guard pull her from class and take her to the administration's office for questioning, which administrators instigated without contacting Doe's parents. Also, Doe alleges that LSC was the proximate cause of her injuries in failing to stop her inappropriate relationship with Cole.

A party's act is the proximate cause of an injury if it is the natural and probable consequence of the act and should have been reasonably foreseen and anticipated in light of the circumstances. *Munsell v. Hambright*, 776 N.E.2d 1272, 1279 (Ind.Ct.App.2002), *trans. denied.* At a minimum, proximate cause requires that the harm would not have occurred but for the defendant's conduct. *Id.* Proximate cause is generally a question of fact, and becomes a question of law only in plain and indisputable cases where merely a single inference or conclusion can be drawn. *Id.; Peters v. Forster*, 804 N.E.2d 736, 743 (Ind.2004).

Here, in using a security guard and questioning Doe in the absence of a parent, we find that LSC is the proximate cause of Doe's alleged injuries related thereto. Whether LSC is the proximate cause of Doe's injuries caused by Cole's actions, is a trickier question; but nevertheless, we find that our supreme court has previously held that "the question concerning foreseeability of intervening third party misconduct is often held to be a question of fact for the jury's determination." *Peters*, 804 N.E.2d at 743 (quoting *Conder v. Hull Lift Truck, Inc.*, 435 N.E.2d 10, 15 (Ind.1982)). Thus, whether LSC could foresee Cole's intervening misconduct is not a question we can appropriately answer.

### D. *Relief Available*

There is one more issue to address under our discussion of negligence. Even though the trial court made no such finding, Doe raises as an additional error that the trial court improperly determined that she was not entitled to relief for the emotional distress she suffered as a result of LSC's acts and omissions. As a result of Doe's presentation of this argument, both parties discuss the validity of a claim by Doe for negligent infliction of emotional distress. Since we stand in the shoes of the trial court in reviewing a grant of a motion for summary judgment, we are not limited to reviewing the trial court's reasons for its decision. *Spears v. Blackwell*, 666 N.E.2d 974, 976 (Ind.Ct.App.1996), *reh'g denied, trans. denied*. The trial court's entry of specific facts and conclusions aids our review, but it has no other effect. *Id.*

Nevertheless, because negligent infliction of emotional distress is not an independent tort, we find it premature to address the issue in this particular case. *Ryan v. Brown*, 827 N.E.2d 112, 118 (Ind.

Ct.App.2005). Rather, we conclude that Doe must first prevail on a negligence claim against LSC; thereafter, she is free to claim damages for emotional distress. *See id.* With that said, however, we additionally note that claims of negligent infliction of emotional distress have historically proved daunting. *Ritchhart*, 812 N.E.2d at 192. In fear that allowing recovery for the negligent infliction of emotional distress will open a floodgate to spurious claims, courts have adopted a number of approaches, from the direct impact rule to a rule that now requires a plaintiff to experience some type of "touching"—not in the sense of a battery, but in the sense of a physical sensation. *Id.*

### III. *LSC's Liability Under Respondeat Superior*

Alternative to the argument that LSC was directly negligent, Doe argues that LSC was vicariously liable for the acts of Cole by way of the doctrine of respondeat superior. Specifically, Doe. asserts that LSC is vicariously liable for Cole's misconduct because in maintaining his relationship with Doe, he used a school-provided laptop to send her emails, and emailing students was an act authorized by LSC.

Under the doctrine of respondeat superior, an employer, who is not liable because of his own acts, can be held liable "for the wrongful acts of his employee which are committed within the scope of employment." *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind.Ct.App.2000), *trans. denied* (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind.1999)). An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer. *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind.Ct.App.1999), *trans. denied*. Where an employee acts partially in self-interest but

is still "partially serving his employer's interests," liability will attach. *Id.* (quoting *Konkle v. Henson,* 672 N.E.2d 450, 457 (Ind.Ct.App.1996)). However, simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment. *City of Fort Wayne,* 706 N.E.2d at 607.

■ Additionally, while our courts have established that an employer can even be vicariously liable for the criminal acts of an employee, such as the sexual acts committed by Cole in the present case, the determination depends upon whether the employee's actions were at least for a time authorized by the employer. *See id.* If it is determined that none of the employee's acts were authorized, there is no respondeat superior liability. *Id.* Furthermore, acts for which the employer is not responsible are those done "on the employee's own initiative, [ ] with no intention to perform it as part of or incident to the service for which he is employed." *Id.* (quoting *Stropes v. Heritage House Childrens Center,* 547 N.E.2d 244, 247 (Ind.1989), *reh'g denied*). If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury. *City of Fort Wayne,* 706 N.E.2d at 607.

■ Here, the record shows that although Cole did not use his LSC-provided email account to send emails to Doe, he did send emails to Doe through his private email account during school hours. Additionally, he sent emails to Doe from home via his LSC-provided laptop. However, simply because Cole used LSC's equipment and facilities to initiate a relationship with Doe, his acts did not necessarily fall within his scope of employment. *See id.* Moreover, while the record also reveals that LSC authorized Cole to send emails to students for school purposes, there is no indication that LSC authorized him to send emails to students for personal reasons. Thus, we conclude that Cole, on his own initiative and unrelated to any school function, instigated an intimate relationship with Doe. In addition, we conclude that his actions were not incident to any service provided by LSC, but rather were fueled entirely by self-interest in a romantic relationship with Doe. *See id.* Consequently, we agree with the trial court's conclusion that LSC is not vicariously liable for the acts of its employee, Cole, under this set of facts.

## CONCLUSION

Based on the foregoing, we conclude that the trial court inappropriately granted summary judgment in favor of LSC as to Doe's negligence claim; however, we conclude that the trial court properly concluded that LSC was not liable under the doctrine of respondeat superior for Cole's misconduct.

Reversed in part, affirmed in part, and remanded.

VAIDIK, J., and DARDEN, J., concur.